# MEMORANDA

OF

# CASES NOT REPORTED IN FULL.

MARY L. McKENNA, as Temporary Administratrix of JOHN P. O'NEIL, Respondent, *v.* THOMAS BOLGER, Appellant.

*Evidence —when a party may testify to an extrinsic fact, which may tend to show that he has not had a certain personal transaction with a deceased person — Code of Civil Procedure, sec.* 829.

Appeal from a judgment in favor of the plaintiff, entered on a verdict.

This action was brought to recover a sum alleged to have been agreed to be paid by the appellant to the decedent, John P. O'Neil, for his interest in a certain farm held and owned by the appellant and O'Neil, as tenants in common. The substance of the alleged agreement is, that on receiving title to the whole of the farm, through amicable proceedings to foreclose a mortgage then existing upon it, the appellant should pay O'Neil $1,666, being one-half of the sum originally invested by O'Neil in the purchase of the farm. A foreclosure was had, it is claimed, under this agreement, at which the appellant purchased the farm and took title to the whole thereof, giving his individual bonds and mortgages in lieu of those previously existing, but afterwards refused to pay the price stipulated for O'Neil's interest.

The court at General Term said: "We see no reason why such an agreement, when consummated by the actual sale and conveyance of the whole title, is not a valid one upon which an action can be maintained for the price agreed upon as for lands sold and conveyed at a purchaser's request at a stipulated price. An agreement of purchase and sale reduced to writing, etc., is not at all necessary where an action is brought to recover an agreed price for lands actually sold and conveyed, pursuant to an oral agreement, where the consideration remains unpaid. And that, in substance, was the alleged agreement in this case, except that the purchaser

was to take the title through an amicable foreclosure to be procured and consummated by the seller.

"We have already determined this question on the demurrer to the answer brought before us by appeal from the Special Term. But questions as to the admissibility of evidence arose upon the trial of this case that call for consideration. This action was brought by O'Neil in his lifetime. On his decease the present plaintiff was substituted as his temporary administrator. The chief testimony in the case to support the alleged agreement was given by one Tobias, a lawyer, who was to some extent connected with O'Neil in business, and acted on his behalf in carrying out the agreement. He gave testimony tending to establish the agreement by conversations had in his office, and in his presence, between O'Neil and the appellant. The agreement was denied by the appellant in his answer; and for the purpose of contradicting or impairing the testimony of Tobias, the defendant sought to give testimony himself showing a condition of things inconsistent with the alleged making of such an agreement. With this view, amongst other things, he was asked the following questions:

"'Will you state to the jury what induced you to have the property foreclosed?'" This was objected to on the ground that it is a personal communication with the deceased. The objection was sustained and an exception taken. The appellant was then asked: 'State the situation of the property at the time before the foreclosure suit as to the payment of interest and all that.' The same objection and ruling were made and the same exception taken.

"The appellant claimed that the foreclosure was not made because of any such agreement as the plaintiff alleged, but because of O'Neil's neglect to pay interest on the mortgages and to keep up his part of the expense of carrying the property. These were extrinsic facts clearly competent to be proved as tending to maintain the defendant's theory of the case. We see no reason why they could not be proved by his testimony. They were not of necessity personal transactions or communications had between the defendant and the deceased; and if they turned out to be in whole or in part of that character, they could have been to such extent excluded when the fact appeared. In *Pinney* v. *Orth* (88 N. Y., 447) it was held that a party is not precluded 'from testifying to

extraneous facts or circumstances which tend to show that a witness who has testified affirmatively to such a transaction or communication has testified falsely, or that it is impossible that his statement can be true.' (See, also, *Lewis* v. *Merritt*, 98 N. Y., 206.) The facts and circumstances, which the questions excluded were designed to call out, may perhaps have been such as to satisfy the jury that Tobias had not testified truly as to the making of the alleged agreement. And they were not necessarily within the inhibition of section 829 of the Code, and therefore the testimony should have been received and, so far as it appeared to be outside of the inhibition of that section, submitted to the consideration of the jury.

" The following questions were also asked the appellant and excluded under the same objection and exception : ' State whether or not you ever made any agreement with Mr. Tobias acting for Mr. O'Neil, O'Neil being absent, in relation to the purchase of O'Neil's interest in such farm ? How many times were you in O'Neil's office in relation to this transaction ? ' The ruling as to these questions was erroneous. Tobias had given testimony tending to show that he had conversations with appellant on the subject of the alleged agreement when O'Neil was not present, in relation to the payment of the amount sued for.

" The defendant was not precluded from contradicting that testimony or from showing affirmatively how often he had been at O'Neil's office, and whether or not there had been any agreement made between himself and Tobias in the absence of O'Neil. In *Pinney* v. *Orth* (*ubi. sup.*) the court said : ' We think that Mr. Orth, for instance, was competent to testify that he was not in the city of New York at the time referred to by the witness, or that the witness was at some other place, or that he never met the witness at the office where the conversations are alleged to have occurred.'

" It is not the intention of the Code to prevent a party to a suit from testifying to any extrinsic fact that tends to contradict a witness who swears to transactions or communications had between such party and a deceased person even where he cannot directly testify that no such communication or transaction was ever had. It was not the intention to prevent the contradiction of a living witness,

but to prevent a living party to a transaction or communication from testifying to it himself when death has closed the mouth of the other. party. So when a witness swears to a contract made by a defendant with a deceased party at a specified time and place, there is in our judgment nothing in the Code to. prevent the defendant from testifying that at the time named he was in Europe or at some distant place rendering it impossible that the witness speaks the truth.

*John McCrone* and *J. T. Fenlon*, for the appellant.

*M. J. McKenna*, for the respondent.

Opinion by Davis, P. J.; Brady and Daniels, JJ., concurred.

Judgment reversed, new trial ordered, costs to abide event.